IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COAL CONTRACTORS (1991), INC., | : | No. 3:05cv398 |
| APPELLANT | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| GENERAL ELECTRIC CAPITAL CORPORATION, | : | |
| APPELLEE | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Presently before the Court for disposition is Appellant Coal Contractors (1991), Inc.'s appeal of Bankruptcy Judge John J. Thomas' decision to grant Appellee General Electric Capital Corporation's claim.  This matter has been fully briefed and is ripe for disposition. For the reasons that follow, we will grant the appeal in part and remand to the bankruptcy court for further proceedings consistent with this opinion.

**I.      Background**

Coal Contractors is a coal mining company currently operating in Chapter 11 bankruptcy in the Middle District of Pennsylvania.  Royal Scot Materials is a coal mining company currently in Chapter 7 bankruptcy in the Southern District of West Virginia, In re Royal Scot Materials, Inc., Chapter 7 Case No. 99-50629 (S.D.W.V.).  General Electric Capital Corporation is the assignee of all right, title, and interest of H. Lynden Graham, Royal Scot's Chapter 7 trustee.

On January 6, 2003, H. Lynden Graham filed a proof of claim for an undetermined amount in Coal Contractors' Chapter 11 case.  He alleges that on May 19, 1999, pursuant to a

"Heads of Agreement" contract, Coal Contractors agreed to purchase a coal processing plant, a sizing plant, and two Demags[1] from Royal Scott for $1.2 million and royalties from the sale of excavated coal. (Appellant App. 8-9). The claim asserts that at the time of the sale, the equipment was located at Royal Scot's coal mining operations in Greenbrier, West Virginia. (Id. at 7). Coal Contractors filed an objection to this claim, arguing that it entered into no such agreement, but if it did, it had already paid the amounts due.

On January 31, 2005, the Bankruptcy Court for the Middle District of Pennsylvania held a hearing to determine the validity of the claim. Following the presentation of evidence from both parties, the bankruptcy court overruled Coal Contractors' objections and allowed Royal Scot's claim for $ 1.2 million secured by the equipment. Coal Contractors appeals this decision.

**II.     Jurisdiction**

We have jurisdiction over the instant bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1), which provides that the district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts.

**III.    Standard of Review**

This court reviews the bankruptcy court's conclusions of law *de novo.* In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). The bankruptcy court's findings of fact will only be set aside if clearly erroneous. BANK. R. 8013 ("On appeal the

---

[1] A Demag is a hydraulic excavator, similar to a large backhoe on tracks.

district court...may affirm, modify, or reverse a bankruptcy judge's judgment order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); In re O'Brien, 188 F.3d at 122.

## IV.   Discussion

A bankruptcy claimant bears the initial burden to "allege facts sufficient to support a legal liability to the claimant." In re Allegheny International, Inc., 954 F.2d 167, 143 (3d Cir. 1992). Once the claimant satisfies its initial burden, its claim is *prima facie* valid. Id. To rebut the *prima facie* claim, the objector "must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." Id. at 174. If the objector meets this burden, "the burden reverts to the claimant to prove the validity of the claim by the preponderance of the evidence." Id.

### A.   Prima Facie Claim

Coal Contractors argues that the bankruptcy court erred in finding that it failed to rebut the *prima facie* validity of General Electric's claim. We agree.[2] The testimony of Jack Munley[3] rebutted the prima facie claim because he set forth evidence, which if believed, refuted General Electric's allegation that Coal Contractors entered into the "Heads of

---

[2] The issue of whether Coal Contractors satisfied its burden of production is a question of law, which we review *de novo*. In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

[3] Jack Munley is not related to the undersigned judge in any way.

3

Agreement" contract in 1999 to purchase the equipment from Royal Scot.  The bankruptcy court found that Munley testified only that he was unaware of the transaction, which, given Munley's general lack of knowledge of the company's purchases, was irrelevant to a determination of when and where Coal Contractors purchased the equipment.

Munley, Coal Contractors' Controller, testified that the two mining plants allegedly purchased in the Heads of Agreement were in fact located at Coal Contractors' Gowen mine when he began working for the company in 1994. (Tr. 14).  He further testified that the company purchased the two Demags sometime between 1995 and 1997 from Demag and financed the purchase through Deutsche Credit. (Tr. 15).  Later, Komatsu Mining purchased Demag, and Coal Contractors continues to make payments to Komatsu for the equipment. (Tr. 15).  On cross examination, Munley testified that he did not oversee payments made under the Heads of Agreement nor did he know if anybody else made these payments. (Tr. 34).  Furthermore, although he balanced Coal Contractors' bank statements, he did not know the purpose of numerous transactions between Coal Contractors and Royal Scot involving hundreds of thousands, or even millions, of dollars. (Tr. 35-42).  He was unaware if any payment listed on the Coal Contractors's bank statement was related to the Heads of Agreement. (Tr. 44-45).  He was unaware of the purpose of any check written by Coal Contractors to Royal Scot. (Tr. 46).

General Electric argues that Munley's testimony was ambiguous at best, and we should uphold the bankruptcy court's decision to disregard his testimony.  When asked who sold the equipment to Coal Contractors, Munley stated, "I imagine - - I think from Demag in the

4

beginning, and they were financed through a company, Deutsche Credit." (Tr. 15). When asked who held the lien on the equipment, he stated, "I believe its Komatsu Mining. Komatsu mining being the company that purchased Demag." (Tr. 15).

We find that the bankruptcy court erred in finding Munley's testimony insufficient to satisfy the minimal burden to rebut the *prima facie* validity of General Electric's claim. Although Coal Contractors was required to produce evidence beyond a mere formal objection, it needed only to produce evidence "equal in force to the *prima facie* case," which is merely an allegation sufficient to support liability. In re Allegheny International, Inc., 954 F.2d at 143. While we agree that his testimony is not particularly persuasive as to which company sold the equipment to Coal Contractors, we find that, if believed, his testimony on the whole refutes General Electric's claim that in 1999 Royal Scot sold the equipment that was located in West Virginia to Coal Contractors. Munley unequivocally explained that Coal Contractors continues to pay Komatsu for the equipment. (Tr. 15). He also stated that the plants were operating at the Gowen site as early as 1994, and Coal Contractors purchased the Demags between 1995 and 1997. (Tr. 14-17). Jack Munley's testimony was not too ambiguous to rebut the claim, as it directly contradicts General Electric's claim that Coal Contractors purchased the equipment from Royal Scot in 1999. Contrary to General Electric's assertion, we will not defer to the bankruptcy court's credibility determinations at this stage because Munley's credibility was not at issue. To rebut the *prima facie* claim, Coal Contractors was required to "produce evidence which, <u>if believed</u>, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International, Inc., 954 F.2d at 143 (emphasis

added). Coal Contractors merely had a burden of production, not persuasion. The burden of persuasion remained with General Electric at all times. Id. Thus, we find that Coal Contractors met its burden of producing some evidence to refute General Electric's claim that Coal Contractors entered into a Heads of Agreement contract in 1999 to purchase the equipment from Royal Scot.

### B.      Burden of Persuasion

Once Coal Contractors satisfied its burden of production, the burden reverted to General Electric to prove the claim by the preponderance of the evidence. Coal Contractors argues that General Electric did not meet this burden because it relied entirely on inadmissible hearsay and we should therefore reverse the bankruptcy court and sustain its objection to the claim in its entirety.

We decline to do so, and instead will remand to the bankruptcy court to determine whether General Electric can establish its claim, including the existence of the agreement, by the preponderance of the evidence. The bankruptcy court never required General Electric to establish the existence of the agreement because it found that the agreement existed based on the *prima facie* claim.

The bankruptcy court should analyze this issue in the first instance. Given the numerous objections, the record was not fully developed to determine the existence of the agreement. For example, as Coal Contractors argues, the bankruptcy court ruled that the Heads of Agreement contract itself was inadmissible hearsay. (Tr. 169). This demonstrates that the court did not analyze whether an agreement existed, because a contract is nonhearsay if offered

to prove the existence of an agreement.

> 'Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay.' A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it. . . .<u>The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection</u>. To introduce a contract, a party need only authenticate it.

Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 540 (5th Cir. 1994) (internal citations omitted, emphasis added). Thus, Coal Contractors' assertion that General Electric could not satisfy its burden to prove the existence of the agreement because the agreement itself was hearsay is erroneous.

Furthermore, Coal Contractors' argument that General Electric produced no admissible evidence of an agreement is meritless. General Electric produced two certified copies of Coal Contractors' pleadings from Royal Scot's Chapter 7 bankruptcy case, wherein Coal Contractors admitted to the existence of an agreement. Royal Scot's trustee filed a complaint against Coal Contractors for the turnover of the equipment, which included the following allegation:

> "14. By the Agreement dated May 19, 1999 (hereinafter "Agreement"), Royal Scot, the Administrators on behalf of Rackwood and the Defendants, Coal Contractors and Dennis Bell, Inc., and a third-party, Viper International Holdings Ltd. . . Entered a contract by which, inter alia, the following payments would be made to Royal Scot:
>
> (A) that Coal Contractors would pay Royal Scot the sum of one million, two hundred thousand dollars ($1,200,000) for the purchase from Royal Scot of a coal processing plant, a sizing plant, two (2) Demags and other equipment (hereinafter 'Sale Equipment').

(Appellant App. 210).

In its answer to this Complaint, Coal Contractors stated,

> The Defendants admit the allegations of paragraph 14 of the Complaint that the Debtor, . . . Coal Contractors . . . executed a written Heads of Agreement dated May 19, 1999, but deny the allegations of said paragraph that the Complaint accurately sets forth the terms of the Agreement. In particular, the amount to be paid for the Equipment is not $1,200,000, but only $800,000, under paragraph 1 of the Agreement.

(Appellant App. 221-22).

In its amended complaint, Royal Scot's trustee again asserted that Coal Contractors agreed to purchase the equipment for $1.2 million. (Appellant App. 231). In its answer, Coal Contractors again admitted the existence of the Heads of Agreement contract. (Appellant App. 292).

Coal Contractors argues that these pleadings are not conclusive and binding judicial admissions in this case. While the pleadings are not binding judicial admissions here, they are admissible as admissions of a party opponent. Universal American Bard Corp., v. J-Chem, Inc., 946 F.2d 1131, 1142 (5th Cir. 1992). A judicial admission is an entirely distinct concept from evidentiary admissions. Judicial admissions are "admissions in pleadings, stipulations, etc. and which do not have to be proven in the same litigation." Giannone v. United States Steel Corp., 238 F.2d 433, 547 (3d Cir. 1956). Thus, Coal Contractors' answer in Royal Scot's Chapter 7 bankruptcy case constitutes a judicial admission in that case only. "However, pleadings which do not amount to judicial admissions . . .may be used as evidence of factual allegations." Id. (citations omitted). Although the bankruptcy court was not bound by these pleadings, it was free to consider them for their probative value as admissions of a party

8

opponent as to the existence of the agreement.[4]  J-Chem, Inc., 946 F.2d at 1142.

Thus, we will not reverse the bankruptcy court in the entirety, but rather will remand to allow it to determine, consistent with this opinion, whether General Electric can establish its claim by a preponderance of the evidence.  An appropriate order follows.

---

[4] In addition, the pleadings would be nonhearsay under Federal Rule of Evidence 801(d)(2), which provides, "A statement is not hearsay if . . . The statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity."

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **COAL CONTRACTORS (1991), INC.,** : | No. 3:05cv398 |
| APPELLANT : |  |
| : | (Judge Munley) |
| v. : |  |
| : |  |
| **ROYAL SCOT MINERALS, INC.** : |  |
| APPELLEE : |  |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW**, to wit, this 17th day of October 2005, Appellant Coal Contractors (1991) Inc.'s appeal (Doc. 1) is hereby **GRANTED** in part. The appeal is granted solely to the extent that the bankruptcy court erred in finding that Coal Contractors failed to rebut General Electric's *prima facie* claim. This case is hereby **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion. Appellant's motion for a stay pending resolution of the appeal (Doc. 17) is **DENIED** as moot.

                                                **BY THE COURT:**

                                                **s/ James M. Munley**
                                                **JUDGE JAMES M. MUNLEY
United States District Court**